IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| STEVEN BENJAMIN SCHWARZ, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 5:19-cv-72 (MTT) |
| | ) | |
| PULASKI STATE PRISON, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## ORDER

Defendant Pulaski State Prison moves for summary judgment on pro se Plaintiff Steven Benjamin Schwarz's claim for refusal to hire because of sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* For the following reasons, that motion (Doc. 36) is **GRANTED**.

## I. SUMMARY JUDGMENT STANDARD

### A. Generally

A court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a genuine dispute of material fact exists, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citation omitted). A material fact is any fact relevant or necessary to the outcome of the suit. *Id.* at 248. And a factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non[-]moving party." *Id.*

(citation omitted).  Accordingly, "the mere existence of a scintilla of evidence in support of the position will be insufficient; there must be evidence on which the jury could reasonably find for the non-moving party."  *Johnson v. Bd. of Regents of Univ. of Ga.*, 263 F.3d 1234, 1243 (11th Cir. 2001) (citation and punctuation marks omitted).

The party moving for summary judgment bears the burden to show that there is no issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may make this showing by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by showing that the non-movant cannot produce admissible evidence to support the issue of material fact.  Fed. R. Civ. P. 56(c)(1).  If the movant meets this burden, the non-moving party must produce evidence showing that an issue of material fact does exist.  *Celotex Corp.*, 477 U.S. at 324.  To do so, the non-moving party must "go beyond the pleadings" and identify "specific facts showing a genuine issue for trial."  *Id.*; *see also* Fed. R. Civ. P. 56(e)(2)-(3).  However, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."  *Anderson*, 477 U.S. at 255 (citation omitted).

**B. Schwarz's failure to file a statement of material facts**

After the Defendant moved for summary judgment, the Court notified Schwarz that

> Local Rule 56 requires a motion for summary judgment to be accompanied by a separate document containing a short and concise statement of material facts in numbered paragraphs. Local Rule 56 also requires a party opposing a summary judgment motion to file a separate concise statement

of material facts responding to the numbered paragraphs of the moving
party's statement. The local rule further requires that the statements of
material fact by both parties must include a reference to that part of the
record that supports each statement.

Doc. 39 at 1.  Local Rule 56 further provides that "[a]ll material facts contained

in the movant's statement which are not specifically controverted by specific citation to

particular parts of materials in the record shall be deemed to have been admitted,

unless otherwise inappropriate."  Schwarz did not file a response to the Defendant's

statement of material facts, nor did he otherwise contest any of the Defendant's

asserted material facts by citation to materials in the record.  The Defendant's statement

of material facts is therefore deemed admitted.  Nevertheless, the Court has "review[ed]

the movant's citations to the record to determine if there is, indeed, no genuine issue of

material fact."  *Reese v. Herbert*, 527 F.3d 1253, 1269 (11th Cir. 2008) (citation and

quotation marks omitted).

## II. FACTS

### A. The job posting

On August 21, 2018, Pulaski State Prison posted a vacancy for the position of

Behavioral Health Counselor Supervisor.  Doc. 36-4 at 2, 8.  The minimum qualifications

for the position were (i) Master's degree and four years of experience, (ii) Bachelor's

degree and six years of experience, or (iii) two years of experience at the position of

Behavioral Health Counselor.  Doc. 38-1 at 1.  The preferred qualifications included

experience managing behavioral health counselors and "[g]ood knowledge of

correctional practices applicable to counseling services," among others.  *Id.*  Katrina

Sutton, a Human Resources manager for the Georgia Department of Corrections

(GDC), reviewed applications and selected three applicants who met the minimum

qualifications: Tracey Jackson, a female Senior Behavioral Health Counselor at Pulaski; Jeffrey Farmer, a male counselor from Rutledge State Prison; and Plaintiff Schwarz, a male psychiatrist who had been unemployed since 2008.  Doc. 36-4 at 3.  Sutton also created a standardized set of interview questions for the position.  Doc. 36-4 at 4, 9.

**B. The selection process**

Pamela Wiggins, the GDC supervisor who oversees female prisons, convened an interview panel composed of three individuals, one of whom was male and two of whom were female.  Doc. 36-6 ¶¶ 2, 7.  Those individuals' notes for each candidate were recorded on confidential evaluation sheets.  Doc. 36-6 ¶ 9, at 33-41.  On the evaluation sheets, each interviewer numerically rated each candidate on a variety of job skills.  *Id.* at 33-41.  Each interviewer then added the scores in each category to yield the interviewer's total score for each candidate.  *Id.*  After the interviews, Sutton obtained approvals from the Human Resources Department for consideration of all three applicants.  Doc. 36-4 ¶ 12.  She also obtained a document entitled "Board Results" that included the results of investigations of each candidate's criminal history, "investigations,"[1] and social media.  Doc. 36-4 ¶ 13, at 11.

The Human Resources approvals, "Board Results", the candidates' applications, the candidates' total interview scores, and the interview evaluation sheets were combined into a folder and sent to Wiggins.  *Id.* ¶ 14.

---

[1] The meaning of this category is unclear from Sutton's declaration, but it appears to concern employee disciplinary history.

Wiggins recommended hiring Jackson for the position based on her review of the folders, including the interview scores.  Doc. 36-6 ¶¶ 10-11.[2]  Robert Toole, Director of Facilities for GDC, reviewed the folders, concurred in Wiggins's recommendation, and made the final decision to hire Jackson.  Doc. 36-5 ¶ 5.

### III. DISCUSSION

A Title VII plaintiff may prove his case circumstantially when there is no direct evidence of discrimination.  The framework for analyzing circumstantial evidence to establish a prima facie case of discrimination is found in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Pursuant to *McDonnell Douglas*, a plaintiff must first establish a prima facie case of discrimination.  If a plaintiff establishes that prima facie case, the burden of production, but not the burden of persuasion, shifts to the employer to articulate a legitimate, non-discriminatory reason for the employment action.  *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254-55 (1981).  This burden of production means the employer "need not persuade the court that it was *actually* motivated by the proffered reasons" but must produce evidence sufficient to raise a genuine issue of fact as to whether it discriminated against the plaintiff.  *Kragor v. Takeda Pharm. Am., Inc.*, 702 F.3d 1304, 1308 (11th Cir. 2012) (emphasis added) (quotation marks and citation omitted).

A plaintiff then has the opportunity to show that the employer's stated reason is a pretext for discrimination.  This may be done "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that

[2] The Defendant also notes that "Ms. Jackson had over four years of recent, hands-on experience as a Behavioral Health Counselor . . . and, thereafter, as a Senior Behavioral Health Counselor. . . .".  Doc. 36-1 at 8.  However, the Defendant does not argue that this experience was one of the reasons why Wiggins and Toole hired Jackson over Schwarz, nor do the affidavits make that claim.

the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at 256. "If a plaintiff produces sufficient evidence that the employer's proffered reason is merely pretextual, that evidence may sometimes be enough to preclude summary judgment in favor of the employer." *Kragor*, 702 F.3d at 1309.

In a failure to hire case, "the plaintiff establishes a prima facie case by demonstrating that: (1) she was a member of a protected class; (2) she applied and was qualified for a position for which the employer was accepting applications; (3) despite her qualifications, she was not hired; and (4) the position remained open or was filled by another person outside of her protected class." *E.E.O.C. v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1273 (11th Cir. 2002).

For purposes of this motion, the Defendant concedes the Plaintiff can establish a prima facie case. Doc. 36-1 at 5. However, the Defendant argues it had a legitimate, non-discriminatory reason for hiring Jackson over Schwarz and that Jackson cannot demonstrate that reason is unworthy of credence. The Defendant argues that "[b]ased upon the interview folder information, including the interview scores, Ms. Wiggins believed that Ms. Jackson was the best qualified candidate for the Behavioral Health Counselor Supervisor position." Doc. 36-1 at 8.

## A. The interview scores

The total of the interviewers' scores for Jackson was 135; Farmer's total was 105; and Schwarz's was 41. Docs. 36-2 ¶ 9; 36-4 at 10. Every interviewer rated Schwarz substantially lower than the other candidates. Doc. 36-4 at 10. The interviewers' individual evaluations provide the reasons for the scores.

Interviewer Courtney Douglas rated Schwarz "below average" in all ten evaluative categories, with especially low scores for "Grievance Procedure Knowledge," "Counseling Caseload Knowledge," "[Prison Rape Elimination Act] Knowledge," "Classification Knowledge," "Decision Making/Problem Solving Skills," "Teamwork," and "Ethics."  *Id.* at 43.[3]  She commented that although Schwarz had experience working in mental health, Schwarz had no knowledge of prison grievance procedures, only "limited" knowledge of how to report PREA incidents, no knowledge of the prison classification process, and "no knowledge of GDC."  *Id.*  In her other comments, Douglas noted Schwarz's M.D. degree, described all his interview answers as "clinical," and noted that Schwarz was "looking to meet with inmates for an hour."  *Id.*

Interviewer Tracy Page also rated Schwarz "below average" in all ten categories, with especially low scores for "Grievance Procedure Knowledge," "PREA Knowledge," "Classification Knowledge," "Decision Making/Problem Solving Skills," and "Ethics."  *Id.* at 40.  In his comments, Page noted Schwarz's medical degree; Schwarz's unfamiliarity with the prison classification process; Schwarz's "finding in favor of the offender," apparently in a sample grievance; and an apparent comment from Schwarz opining that the level of sensory deprivation in certain cells at Central State Prison was excessive. *Id.* at 44.

Interviewer LaSandra Lofton also rated Schwarz "below average" in all ten categories, with especially low scores for "Grievance Procedure Knowledge," "Counseling Caseload Knowledge," "PREA Knowledge," "Classification Knowledge," "Management Experience," "Decision Making/Problem Solving Skills," and "Ethics."  *Id.*

---

[3] The other categories were "Communication," "Mental Health Knowledge," and "Management Experience."  Doc. 36-4 at 43.

at 45.  Her only comments were that he had "[n]o knowledge of the Department" but did have an "extensive medical background."  *Id.*

By contrast, all three interview sheets for Jackson rated her as "good" or "very good" in all ten categories.  *Id.* at 37-39.  Douglas commented favorably on her experience with Pulaski's all-female prison population, her knowledge of the classification process, and her knowledge of the grievance procedure.  *Id.*  Page noted Jackson's familiarity with the grievance procedures, knowledge of the prison classification process, knowledge of PREA, and willingness to "[g]o by policy."  *Id.* at 38. Lofton commented favorably on Jackson's experience as a counselor and her knowledge of job expectations.  *Id.* at 39.

The evaluation sheets and scores show that all three interviewers rated Jackson more favorably than Schwarz in all ten categories, all three interviewers emphasized Jackson's knowledge of the prison context and of GDC's policies and procedures, and all three interviewers emphasized Schwarz's inexperience in the prison context and his ignorance of GDC's policies and procedures.[4]

## B. Pretext

Further, Schwarz failed to introduce any evidence demonstrating that the interviewers' conclusions—or Wiggins's and Toole's statements that their decisions were based on the interviewers' conclusions—are unworthy of credence.

---

[4] Based on the evaluations, it is possible that Schwarz's concern over prison conditions and receptive posture toward prisoner grievances worked against him.  Even if that is true, it does not support Schwarz's claims of sex discrimination.

In his brief, Schwarz's only argument concerning pretext is that he was rejected because he did not know enough about the GDC and its procedures.  Doc. 42 at 3-4. Schwarz argues that

> "Ms. Jackson had inside knowledge of specific policies and procedures at Pulaski State Prison.  This gave her an overwhelming and decisive advantage over a candidate like the Plaintiff who never had an opportunity to work as a counselor at Pulaski State Prison prior to the interview."

*Id.* at 3.  Based on the evaluation forms, the interviewers certainly valued Jackson's knowledge of the prison context and GDC procedures.  And, as Schwarz recognizes, the application process was designed to take account of the applicant's knowledge of GDC procedures and PREA.  However, that does not help his Title VII claim for sex discrimination.  First, that knowledge was clearly a job qualification: the application itself listed "[g]ood knowledge of correctional practices applicable to counselling services" as a "Preferred Qualification."  Doc. 38-1 at 1.[5]  Second, an applicant's knowledge of GDC procedures and PREA requirements is completely unrelated to his or her sex.  Third, Schwarz's emphasis on Jackson's superior understanding of GDC procedures actually supports the employer's proffered legitimate, non-discriminatory reason for hiring Jackson over him.

Schwarz also argues that Jackson was untruthful on her application and failed to meet the minimum qualifications for the position.  Although Schwarz does not explicitly make this argument in the context of pretext or any other conventional Title VII

---

[5] Schwarz argues that "these procedures have nothing to do with how to treat and manage patients with psychiatric problems."  Doc. 42 at 4.  That may be, but the fact remains that Pulaski was looking for someone who both (i) was able to provide counseling services to inmates *and* (ii) had knowledge of GDC's procedures and familiarity with the prison context.

framework, the Court considers whether Schwarz's argument relates to the pretext

inquiry.

Schwarz argues that the application required that the applicant have no felony

convictions.  Doc. 42 at 1.  Citing the "Board Results" document, he argues that

Jackson was convicted of the felony of "Theft by Taking" in 1999 but falsely claimed on

her application that she had no felonies.  *Id.*  However, the "Board Results" document

states that Jackson was eligible for employment under the First Offender Act.  Doc. 42-2

at 1.  Accordingly, Schwarz has no evidence Jackson failed to meet the minimum job

requirements.

In sum, the Defendant met its burden of proffering a legitimate, non-

discriminatory reason for hiring Jackson rather than Schwarz, and Schwarz has

produced no evidence showing that reason is unworthy of credence.

## C. Convincing mosaic

Schwarz makes additional arguments that Pulaski's decision to hire Jackson was

discriminatory.  Schwarz does not explicitly tie those arguments to the prima facie case

or the pretext inquiry, nor would those arguments, even if meritorious, tend to show

pretext.  Still, the Court recognizes that establishing the *McDonnell Douglas* elements is

not "the *sine qua non* for a plaintiff to survive a summary judgment motion in an

employment discrimination case."  *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321,

1328 (11th Cir. 2011).  A plaintiff can always survive summary judgment by creating a

triable issue concerning the employer's discriminatory intent.  A plaintiff does this by

presenting "'a convincing mosaic of circumstantial evidence that would allow a jury to

infer intentional discrimination by the decisionmaker.'"  *Id.* (quoting *Silverman v. Bd. Of*

*Educ.*, 637 F.3d 729, 734 (7th Cir. 2011)).  Again, consistent with its obligation to liberally construe pro se pleadings, the Court considers whether Schwarz could show a genuine dispute of material fact apart from the *McDonnell Douglas* framework.

In his response brief, Schwarz argues that a gender imbalance among decisionmakers in the application process indicates discrimination.  Doc. 42 at 2-3. Those decisionmakers included the interviewers—Douglas (female), Page (male), and Lofton (female)—along with Sutton (female), Wiggins (female), and Toole (male). Referring to these six individuals as "the Admissions Committee," Schwarz claims that a 4-to-2 balance indicates discrimination.  Doc. 42 at 3.  The Court disagrees.  First, there is no evidence Sutton had any decision-making power after the field was narrowed to Jackson, Schwarz, and Farmer.  So it was, at most, a 3-2 imbalance, which, by itself, is no evidence of discrimination.[6]  Further, the male interviewer, like the two female interviewers, gave Schwarz "below average" ratings in every category and rated him well below Jackson and Farmer.[7]  In short, nothing in the application process, including the demographics of the decisionmakers, is evidence of sex discrimination against Schwarz.

## D. Disparate impact

Finally, Schwarz argues that "'Title VII prohibits not only intentional forms of employment discrimination[] but also practices that disproportionately exclude groups protected by the Act unless business necessity can be demonstrated.'"  Doc. 42 at 5

---

[6] Not that a 4-2 imbalance would be evidence of discrimination, either.

[7] For what it is worth, arguably Page, the male, was the hardest on Schwarz.  Douglas rated him 31 points below Jackson (44 and 13), Lofton rated him 31 points below Jackson (44 and 13), and Page rated him 32 points below Jackson (47 and 15).

(quoting 55 N.Y.U. L. Rev. 793) (citing *Griggs v. Duke Power Co.*, 401 U.S. 424, 431 (1971); *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 425 (1975)). He appears to be arguing a disparate impact theory. However, Schwarz fails to point to a particular pattern or practice he alleges is discriminatory. *See E.E.O.C. v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1274 (11th Cir. 2000) ("[i]n the first stage of a disparate impact case, the 'complaining party [must] demonstrate [ ] that a respondent uses a particular employment practice that causes a disparate impact on the basis of race, color, religion, sex, or national origin." (quoting 42 U.S.C. § 2000e–2(k)(1)(A)(i) (other quotation marks and citation omitted)). Rather, he asserts that administrators at Pulaski are disproportionately female. Doc. 42 at 5-6. However, mere disproportionality among employees is not sufficient evidence for a jury to conclude "that discrimination is the company's 'standard operating procedure.'" *Joe's Stone Crab, Inc.*, 220 F.3d at 1274; *see In re Emp't Discrimination Litig. Against State of Ala.*, 198 F.3d 1305, 1312 (11th Cir. 1999) (discussing the plaintiff's burden in a disparate-impact case).[8]

## IV. CONCLUSION

For the reasons noted above, the Defendant's motion for summary judgment (Doc. 36) is **GRANTED**.

**SO ORDERED**, this 10th day of July, 2020.

> S/ Marc T. Treadwell
> MARC T. TREADWELL
> CHIEF UNITED STATES DISTRICT JUDGE

---

[8] Nor does this disproportionality create a convincing mosaic of circumstantial evidence for Schwarz's failure to hire claim.